IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------- x
: 
In re:                             : Chapter 11
                                   :
SAVIENT PHARMACEUTICALS, INC.,     : Case No. 13-12680 (MFW)
et al.,                            :
                                   : Jointly Administered
          Debtors.[1]              :
                                   : **Hrg. Date: 2/6/2014 at 9:30 a.m. (Eastern)**
                                   : **Obj. Deadline: 1/30/2014 at 4:00 p.m. (Eastern)**
---------------------------------- x

**DEBTORS' MOTION FOR ENTRY OF ORDER PURSUANT TO
SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019
APPROVING THE SETTLEMENT AGREEMENT AMONG THE DEBTORS,
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE
UNOFFICIAL COMMITTEE OF SENIOR SECURED NOTEHOLDERS**

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") hereby move (the "Motion"), pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order substantially in the form attached hereto (the "Order") approving the settlement agreement attached to the Order as Exhibit A (the "Settlement") among the Debtors, the Official Committee of Unsecured Creditors (the "Committee") and the Unofficial Committee of Senior Secured Noteholders (as defined below, and together with the Debtors and the Committee, the "Parties"). In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Savient Pharmaceuticals, Inc. (3811); and Savient Pharma Holdings, Inc. (0701). The address of the Debtors' corporate headquarters is 400 Crossing Boulevard, 3rd Floor, Bridgewater, New Jersey 08807.

51790/0001-10201637v4

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and legal predicates for the relief requested herein are section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

3. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

## BACKGROUND

### A. The Chapter 11 Cases

4. On October 14, 2013 (the "Petition Date"), the Debtors each commenced a bankruptcy case by filing a petition for relief under chapter 11 of the Bankruptcy Code (together, the "Chapter 11 Cases"). The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of the Chapter 11 Cases, is set forth in the Declaration of John P. Hamill in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 4].

5. The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. On October 24, 2013, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee pursuant to section 1102(a) of the Bankruptcy Code [Docket No. 81].

7. On December 13, 2013, the Court entered an order [Docket No. 251] approving the sale of substantially all of the Debtors' assets (the "Sale") to Crealta Pharmaceuticals LLC (the "Purchaser"). The Sale was consummated on January 9, 2013.

**B.    The Senior Secured Notes**

8. Prior to the Petition Date, Savient Pharmaceuticals, Inc. issued approximately $170,941,000 of senior secured discount notes (the "Secured Notes" and, the holders thereof, the "Secured Noteholders") pursuant to that certain Indenture (the "Indenture"), dated as of May 9, 2012, by and among Savient Pharmaceuticals, Inc., as Issuer, Savient Pharma Holdings, Inc. and Savient Pharma Ireland Limited, as Guarantors, and U.S. Bank National Association, as Indenture Trustee (the "Indenture Trustee") and Collateral Agent (the "Collateral Agent", and together with the Secured Noteholders and the Indenture Trustee, the "Prepetition Secured Parties"). The Secured Notes are secured by properly perfected first priority security interests (the "Prepetition Liens") in substantially all of the Debtors' assets, including all of the Debtors' cash and the assets acquired by the Purchaser pursuant to the Sale (the "Prepetition Collateral").

9. On October 24, 2013, certain unaffiliated holders of the Secured Notes filed a verified statement under Bankruptcy Rule 2019 [Docket No. 78] (such holders, the "Unofficial Committee of Senior Secured Noteholders").

**C.    The Interim Cash Collateral Order and the Committee's Objection**

10. On October 16, 2013, the Court entered an interim order authorizing the Debtors to use the Prepetition Secured Parties' cash collateral and providing the Prepetition Secured Parties with certain forms of adequate protection [Docket No. 43] (the "Interim Cash Collateral Order").

51790/0001-10201637v4

11. On November 25, 2013, the Committee filed an objection to entry of a final cash collateral order [Docket No. 178] (the "Objection"). By its Objection, the Committee raised a number of issues with the proposed forms of adequate protection set forth in the Interim Cash Collateral Order. See Objection at ¶¶ 20-30. The Committee also asserted that it needed additional time and an increased budget in order to investigate a variety of potential causes of action with respect to the validity and extent of the Prepetition Liens and Prepetition Collateral. Id. at ¶¶ 33-37 (the "Potential Causes of Action"). For example, the Committee alleged that it was investigating whether the May 2012 exchange transaction, pursuant to which the Debtors issued the Secured Notes, may have constituted a constructive fraudulent conveyance, and therefore whether any of the Prepetition Liens granted in favor of the Prepetition Secured Parties may be subject to avoidance. Id. at 34-35. The Committee also stated that it had identified certain material assets that it believed were not part of the Prepetition Collateral and therefore such assets (or the value attributable thereto) should be available for distribution to unsecured creditors. Id. at 36.

D. **The Final Cash Collateral Order and the Settlement**

12. The Debtors and the Unofficial Committee of Senior Secured Noteholders vigorously dispute the Committee's assertion that the Prepetition Liens may be subject to avoidance or that any of the Debtors' material assets are not part of the Prepetition Collateral. Nevertheless, litigating the Objection or any of the Potential Causes of Action would have been costly and time-consuming. In addition, the Debtors' management and professionals would have had to devote substantial resources to prepare for a contested cash collateral hearing at the same time as such individuals were focusing all of their attention on generating a robust auction. Given the disruption and delay that likely would have ensued had the Debtors decided to litigate the Objection, and in light of the critical importance of the auction in maximizing creditor

4

recoveries, the Parties determined prior to the auction that it was in the best interests of all of the Debtors' stakeholders to settle the Potential Causes of Action and related issues that the Committee raised in its Objection.

13. Accordingly, after extensive good faith negotiations, on the eve of the auction the Parties reached an agreement on the principal terms of the Settlement, and on December 10, 2013, the Debtors issued a press release describing such terms. Those terms were then subsequently embodied in Paragraph 7(c) of the consensual final cash collateral order that the Court approved on December 13, 2013 [Docket No. 250] (the "Final Cash Collateral Order"). Paragraph 7(b) of the Final Cash Collateral Order requires the Parties to formalize the Settlement for approval by the Court in either a motion pursuant to Bankruptcy Rule 9019 and/or a chapter 11 plan of liquidation. The Debtors are therefore filing this Motion in order to satisfy the Parties' obligations under Paragraph 7(b) of the Final Cash Collateral Order.

14. The terms of the Settlement are as follows:

| **GUC Trust Accounts and GUC Assets** | Pursuant to the Final Cash Collateral Order, the Unofficial Committee of Senior Secured Noteholders shall direct the Collateral Agent to transfer the following as a carve-out from the proceeds of the sale of the Debtors' assets on or as soon as practicable after the Settlement Effective Date to one or more segregated accounts held or designated by Pachulski Stang Ziehl & Jones LLP (the "GUC Trust Accounts"), with such assets to be held in trust for the beneficiaries described herein:<br><br>• $2,525,000 in cash, which is to be held for the benefit of creditors holding allowed general unsecured claims against the Debtors (such creditors, the "General Unsecured Creditors", and the payment, the "GUC Cash Payment") and for the benefit of any professionals retained by the Committee, for payment of fees and expenses incurred by such professionals that are approved by order of the Court, without regard to any investigation or similar cap contained in the final cash collateral order entered in these cases (the "Committee Professional Fee Cash"); and |
|---|---|

|  | • $100,000 in cash to be held for the benefit of the indenture trustee (the "Convertible Notes Indenture Trustee") under that certain indenture dated as of February 4, 2011, pursuant to which Savient Pharmaceuticals, Inc. issued $230,000,000 in convertible senior notes due February 1, 2018, to pay fees and expenses (including the fees of counsel) incurred by the Convertible Notes Indenture Trustee (the "Convertible Notes Trustee Payment"). <br><br> On and after the Settlement Effective Date (defined below), the Debtors or the Collateral Agent (at the direction of the Unofficial Committee of Senior Secured Noteholders), as applicable, shall also transfer to the GUC Trust Accounts, within five (5) business days of receipt thereof, one hundred percent (100%) of any proceeds received by the Debtors or the Collateral Agent from or on account of the Debtors' pending litigation in the case captioned Savient Pharmaceuticals, Inc. v. CVS Caremark Corporation et al., Case No. MID-L-2841-13 (Sup. Ct. N.J.) (the "CVS Litigation") or the accounts receivable which are the subject of the CVS Litigation, which amounts shall be held for the benefit of General Unsecured Creditors (the "CVS Litigation Proceeds"). From and after the date hereof, the Debtors shall cooperate with the Committee and its professionals with respect to the CVS Litigation. Pursuant to the Chapter 11 Plan (as defined below), the Alternative Trust Structure (as defined below), or further order of this Court, the Debtors shall transfer all right, title and interest in the CVS Litigation and the CVS Litigation Proceeds to a trust that will be established pursuant to the Chapter 11 Plan for the benefit of General Unsecured Creditors (the "Liquidating Trust"). Any trust agreement governing the Liquidating Trust shall be reasonably satisfactory to the Committee and the Committee shall select the trustee for the Liquidating Trust; provided, however, that the trustee selected shall be reasonably acceptable to the Debtors. <br><br> Pursuant to a confirmed Chapter 11 Plan (as defined below) or the Alternative Trust Structure (as defined below) as contemplated by this Settlement, or further order of this Court, the Debtors shall transfer all claims and causes of action arising under chapter 5 of the Bankruptcy Code (but excluding any claims or causes of action that may exist against the Prepetition Secured Parties or with respect to the Prepetition Collateral), and the proceeds thereof, (the "Avoidance Action Assets", and together with the GUC Cash Payment, the CVS Litigation and the CVS Litigation Proceeds, the "GUC Assets") to the |
|---|---|

6

| | Liquidating Trust. |
|---|---|
| **Distributions from the GUC Trust Accounts** | The GUC Assets and the Convertible Notes Trustee Payment shall only be distributed pursuant to a confirmed Chapter 11 Plan contemplated by this Settlement, the Alternative Trust Structure (as defined below) or upon further order of the Court.<br><br>The Committee Professional Fee Cash shall be distributed to Committee professionals consistent with the terms of the interim compensation procedures order entered by the Court.<br><br>In the event that the effective date of the Chapter 11 Plan contemplated by this Settlement does not occur on or before June 30, 2014, or such later date agreed by the Parties, the Parties shall create an unsecured creditor vehicle or similar trust structure to facilitate the distribution of the GUC Assets to General Unsecured Creditors, which structure shall be negotiated in good faith by the Parties and shall be subject to terms and conditions reasonably satisfactory to each of the Parties (the "Alternative Trust Structure"). |
| **Distributions to Prepetition Secured Parties** | The Chapter 11 Plan contemplated by this Settlement shall provide that, after payment of all administrative and priority claims, or after funding a reserve for any such unpaid claims in amounts consistent with the Final Cash Collateral Order, the final cash collateral budget (the "Final Cash Collateral Budget") that was attached to the *Certification of Counsel Regarding Final Cash Collateral Order and Budget* [Docket No. 306] and approved by the Court, the Debtors shall distribute all of their cash and other assets or the proceeds thereof (which, for the avoidance of doubt, shall not include the GUC Assets, Committee Professional Fee Cash and Convertible Notes Trustee Payment or any interest in the Liquidating Trust or proceeds thereof) to the Collateral Agent for the benefit of the Prepetition Secured Parties until the Prepetition Obligations and Adequate Protection Obligations (both as defined in the Final Cash Collateral Order) are indefeasibly paid in full.<br><br>For the avoidance of doubt, nothing in this Settlement shall authorize the Debtors to make payments in connection with the Chapter 11 Plan or otherwise in amounts in excess of those permitted under the Final Cash Collateral Order and the Final Cash Collateral Budget. |
| **Committee Professional Fees** | The Final Cash Collateral Budget shall include $25,000 per month for the Court-approved fees and expenses of the Committee's Delaware counsel, Pachulski Stang Ziehl & Jones LLP, incurred during the period beginning on January 1, 2014 |

7

| | |
|---|---|
| | through the dissolution of the Committee (such amounts, the "Committee Delaware Counsel Permitted Fees"). The Unofficial Committee of Senior Secured Noteholders shall not object to any applications made by the Committee's retained professionals for payment of fees and expenses so long as such applications are consistent with the Final Cash Collateral Budget. For the avoidance of doubt, the Committee's retained professionals shall not seek payment from the Debtors for any fees or expenses in excess of the Committee Professional Fee Cash and the Committee Delaware Counsel Permitted Fees; it being understood that the Committee professionals shall be entitled to reimbursement from the proceeds of the Liquidating Trust on a first-out basis for the balance of any unpaid fees or expenses of the Committee professionals that are allowed by the Court. |
| **Prepetition Secured Parties' Deficiency Claims** | The Chapter 11 Plan and any Alternative Trust Structure contemplated by this Settlement shall provide that the Prepetition Secured Parties shall not receive any distribution from the GUC Assets on account of their unsecured deficiency claims (the "Deficiency Claims"). In order to effectuate the foregoing, the Chapter 11 Plan shall provide that the Deficiency Claims shall be allowed solely for voting purposes and the holders of Deficiency Claims shall be deemed automatically and without the need for any action to have waived their entitlement to any distributions on account of such Deficiency Claims. In addition, the Prepetition Secured Parties shall waive, and not seek payment on account of, their Adequate Protection Liens and 507(b) Claims (both as defined in the Final Cash Collateral Order). |
| **Support of a Chapter 11 Plan** | The Parties agree to support this Settlement and consummation of a chapter 11 liquidating plan that embodies the terms of this Settlement, is consistent with this Settlement and is otherwise reasonably satisfactory to each of the Parties, and which will contain full and complete release and exculpation provisions for the benefit of each of the Parties and U.S. Bank National Association, as Indenture Trustee and Collateral Agent for the Senior Secured Notes (together with each of their respective officers, directors, employees, agents, financial advisors, legal advisors) and each member of the Committee, all to the maximum extent permitted under applicable law (the "Chapter 11 Plan"). The Chapter 11 Plan will provide for, *inter alia*, the distribution of the GUC Assets to General Unsecured Creditors in a manner consistent with this Settlement and the Final Cash Collateral Order. The Debtors will take all reasonably feasible actions to expeditiously pursue the confirmation and |

| | |
|---|---|
| | consummation of the Chapter 11 Plan.<br><br>The form and substance of the Chapter 11 Plan, the disclosure statement relating to the Chapter 11 Plan, the plan supplement and other documents necessary to implement the Settlement shall each be reasonably satisfactory to the Parties. |
| **Settlement Effective Date** | On the earliest of (i) first day following entry of an order approving the Motion, provided that no objection to the Motion has been filed that has not otherwise been withdrawn or settled, (ii) the first business day the Order has become a final, non-appealable order, or (iii) such other date after entry of the Order as may be agreed to by the Parties (each acting in their sole discretion), the settlements and compromises described herein shall become effective (such date, the "<u>Settlement Effective Date</u>"). |

15. The Debtors, the Unofficial Committee of Senior Secured Noteholders and the Committee believe that the Settlement is in the best interests of the Debtors' estates, as it resolves the Committee's Objection and the Potential Causes of Action while providing a meaningful recovery to general unsecured creditors, thereby paving a clear path for the Debtors to expeditiously and economically move forward with the plan process and the conclusion of these Chapter 11 Cases.

## RELIEF REQUESTED

16. By this Motion, the Debtors seek entry of an Order, substantially in the form attached hereto, approving the Settlement in its entirety.

## BASIS FOR RELIEF REQUESTED

17. Section 105(a) of the Bankruptcy Code empowers a court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The purpose of section 105(a) of the Bankruptcy Code is to ensure a bankruptcy court's power to take whatever action "is appropriate or necessary in

aid of the exercise of [its] jurisdiction." 2 Collier on Bankruptcy ¶ 105.01[2] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2013) (footnote omitted); see also Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1242 (6th Cir. 1993) ("The basic purpose of [section 105] is to enable the court to do whatever is necessary to aid its jurisdiction, i.e., anything arising in or relating to a bankruptcy case.") (citation omitted); Mgmt. Tech. Corp. v. Pardo (In re Mgmt. Tech. Corp.), 56 B.R. 337, 339 (Bankr. D.N.J. 1985).

18.    Bankruptcy Rule 9019, which governs the approval of compromises and settlements, provides, in relevant part:

> On motion by the trustee [or debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

19.    In determining whether to approve a settlement pursuant to section Bankruptcy Rule 9019, a bankruptcy court is required to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." See Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996). The bankruptcy court will consider four criteria in applying this balancing test: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id. (citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968); In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also In re Marvel Entm't Grp., Inc., 222 B.R. 243, 249 (D. Del. 1998) (relying on the same four factors to determine the fairness, reasonableness and adequacy of a settlement). "The court must also consider 'all other factors

10

relevant to a full and fair assessment of the wisdom of the proposed compromise.'" Marvel, 222 B.R. at 249 (citing TMT Trailer, 390 U.S. at 424). The ultimate inquiry is whether, in the court's discretion, the compromise embodied in the settlement "is fair, reasonable, and in the interest of the estate." Id. (citing In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).

20. A court need not decide the numerous issues of law and fact raised by a settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)); see also In re World Health Alts., Inc. 344 B.R 291, 296 (Bankr. D. Del. 2006).

21. The Settlement should be approved, as it is in the best interests of the Debtors' estates and their creditors and will maximize creditor recoveries while reducing administrative costs and clearing a path for the Debtors to pursue confirmation of a liquidating chapter 11 plan. The Settlement avoids what would have been costly and time-consuming litigation regarding several contentious issues implicated by the Committee's Objection and the Potential Causes of Action in a manner that will facilitate an expeditious conclusion to these Chapter 11 Cases.

22. The Settlement is the result of extensive, arm's length negotiations among the Parties and provides substantial benefits to the Debtors' estates, the Prepetition Secured Parties and general unsecured creditors. Specifically, as a result of the Settlement, (i) general unsecured creditors will receive a meaningful distribution (in excess of $2 million, with the potential for additional value depending on the resolution of the CVS Litigation), (ii) the Debtors anticipate that they will be able to pay all administrative and priority claims in full, and that the multi-million dollar wind-down budget that the Prepetition Secured Parties agreed to fund in connection with the Final Cash Collateral Order will be sufficient to permit confirmation of a

11

liquidating chapter 11 plan, and (iii) upon entry of the Order approving the Settlement, the Committee will, as a result of provisions set forth in the Final Cash Collateral Order, release any and all claims it may have against the Prepetition Secured Parties or relating to the Prepetition Liens or Prepetition Collateral.

23. Thus, the Debtors, the Unofficial Committee of Senior Secured Noteholders and the Committee have determined that it is in the best interests of the Debtors' estates, their creditors, and all other parties in interest to avoid costly, protracted and disruptive litigation and to instead quickly and consensually resolve the Committee's Objection and the Potential Causes of Action in the manner set forth in the Settlement. The Debtors submit that the Settlement more than satisfies the standards set forth above and should be approved.

## NOTICE

24. Notice of this Motion shall be given to: (i) the U.S. Trustee; (ii) the Indenture Trustee; (iii) the indenture trustee under the 2018 Convertible Notes; (iv) counsel to the Unofficial Committee of Senior Secured Noteholders; (v) counsel to the Committee; and (vi) all parties entitled to notice pursuant to Local Bankruptcy Rule 2002-1. The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

25. No prior request for the relief sought in this Motion has been made to this or any other Court.

51790/0001-10201637v4

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto approving the Settlement and granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
       January 15, 2014

    COLE, SCHOTZ, MEISEL, FORMAN
    & LEONARD, P.A.

    /s/ David R. Hurst
    David R. Hurst (I.D. No. 3743)
    J. Kate Stickles (I.D. No. 2917)
    500 Delaware Avenue, Suite 1410
    Wilmington, Delaware 19801
    Telephone: (302) 652-3131
    Facsimile: (302) 652-3117

    - and -

    Anthony W. Clark (I.D. No. 2051)
    Dain A. De Souza (I.D. No. 5737)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    One Rodney Square
    P.O. Box 636
    Wilmington, Delaware 19899-0636
    Telephone: (302) 651-3000
    Fax: (302) 651-3001

    - and -

    Kenneth S. Ziman
    David M. Turetsky
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    Four Times Square
    New York, New York 10036-6522
    Telephone: (212) 735-3000
    Fax: (212) 735-2000

    *Counsel for Debtors and Debtors-in-Possession*

51790/0001-10201637v4