IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------x
: 
In re: : Chapter 11
:
SAVIENT PHARMACEUTICALS, INC., : Case No. 13-12680 (MFW)
et al., :
: Jointly Administered
Debtors.[1] :
: Related Docket Nos. 275 and 305
: Hearing Date: March 17, 2014 at 11:30 a.m.
: Response Date: March 10, 2014 at 4:00 p.m.
------------------------------x

## MOTION OF PNC BANK, NATIONAL ASSOCIATION FOR RELIEF FROM THE AUTOMATIC STAY

**NOW COMES** PNC Bank, National Association ("**PNC Bank**"), by and through its undersigned counsel, and hereby moves (the "**Motion**") for entry of an order granting PNC Bank relief from the automatic stay and authorizing PNC Bank to set off funds held in certificates of deposit in which Savient Pharmaceuticals, Inc. and Savient Pharma Holdings, Inc., the debtors and debtors-in-possession in the above captions cases (jointly the "**Debtors**") granted PNC Bank a contractual and possessory security interest. In support of this Motion, PNC Bank states as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Savient Pharmaceuticals, Inc. (3811); and Savient Pharma Holdings, Inc. (0701). The address of the Debtors' corporate headquarters is 400 Crossing Boulevard, 4th Floor, Bridgewater, New Jersey 08807.

## Jurisdiction and Venue

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this proceeding in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 362(d)(1) and 553 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**").

### A. PROCEDURAL BACKGROUND

2. On October 14, 2013 (the "**Petition Date**"), the Debtors each filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code. Pursuant to an order of the Bankruptcy Court entered on October 16, 2013, the Debtors' cases are being jointly administered.

3. On December 18, 2013, the Debtors filed their motion for an order approving a global settlement agreement (the "**Motion for Global Settlement Agreement**") with Wells Reit—Multi-State Owner, LLC ("**Piedmont**"), the lessor of the Debtors' current headquarters in Bridgewater, New Jersey. By the Motion for Global Settlement Agreement, the Debtors sought, in part, to reject their lease (the "**Lease**") with Piedmont for their corporate headquarters located at 400 Crossing Boulevard, Bridgewater, New Jersey (the "**Headquarters**") and abandon, to Piedmont, a letter of credit in the amount of $1.3 million, which secured the Debtors' obligation under the Lease.

4. On or about January 6, 2014, the Court entered an Order approving the Debtor's Motion for Global Settlement Agreement (the "**Order Approving the Global Settlement Agreement**").

**B.    PRE-PETITION HISTORY**

5.     On August 22, 2005, debtor Savient Pharmaceuticals, Inc. ("**Savient**") entered a Reimbursement Agreement for Standby Letter of Credit (the "**Reimbursement Agreement**") with PNC Bank pursuant to which Savient could request that PNC Bank issue one or more letters of credit.

6.     A true and accurate copy of the Reimbursement Agreement is attached as **Exhibit A** to the Affidavit of Brett A. Bertoli, Vice President of PNC Bank (hereinafter the "**Bertoli Affidavit**") (which is attached hereto as **Exhibit 1**) and incorporated herein by reference.

7.     On or about January 13, 2012, in conjunction with the Reimbursement Agreement and at Savient's request, PNC Bank issued an irrevocable standby letter of credit (last 4 digits of Letter of Credit No. 6529)(the "**Letter of Credit**") for the benefit of Piedmont. By amendment dated February 7, 2013, the amount of the Letter of Credit totaled $1.3 million.

8.     The Letter of Credit was issued for the benefit of Piedmont in order to secure the Debtors' obligation under the Lease.

9.     A true and accurate copy of Savient's application submitted to PNC Bank requesting the Letter of Credit and the amendment thereto (jointly the "**Letter of Credit Application**") are attached as **Exhibit B** to the Bertoli Affidavit and incorporated herein by reference.

10.     A true and accurate copy of the Letter of Credit and subsequent amendment thereto are attached as **Exhibit C** to the Bertoli Affidavit and incorporated herein by reference.

11.     In order to secure the repayment of the Letter of Credit, Savient executed that certain Pledge Agreement dated January 5, 2012 (the "**First Pledge Agreement**") by which Savient

granted PNC Bank a security interest in a certificate of deposit held by PNC Bank in the amount of $1.3 million (last 4 digits of Acct # 2019)(hereinafter the "**CD**").

12. A true and accurate copy of the First Pledge Agreement is attached as **Exhibit D** to the Bertoli Affidavit, and incorporated herein by reference.

13. On or about June 6, 2012, and to further secure PNC Bank's obligations pursuant to the Letter of Credit, Savient executed a second pledge agreement (the "**Second Pledge Agreement**") by which Savient granted PNC Bank a security interest in a second certificate of deposit in the total amount of $150,000.00 (last 4 digits of Acct# 2548) (the "**Additional CD**").

14. A true and accurate copy of the Second Pledge Agreement is attached as **Exhibit E** to the Bertoli Affidavit, and incorporated herein by reference. (The First Pledge Agreement and Second Pledge Agreement will hereinafter be collectively referred to as the "**Pledge Agreements**.")

15. The current value of the CD is $1,306,091.61.

16. The current value of the Additional CD is $150,373.65. (The CD and Additional CD will hereinafter be collectively referred to as the "**CDs**.")

17. Pursuant to the terms of the Pledge Agreements, PNC Bank has a contractual right to withdraw the funds represented by the CDs to satisfy any obligations Savient owes to PNC Bank. The Reimbursement Agreement also contractually binds Savient to pay PNC Bank any amount PNC Bank pays to Piedmont under the Letter of Credit, plus interest, reasonable attorney's fees costs and expenses.

18. On December 14, 2013, PNC Bank filed a proof of claim against Savient (designated as proof of claim no. 20) (the "**PNC Proof of Claim**") asserting a secured claim in the amount of $1,300,000 based on the Pledge Agreements.

### C. PNC BANK'S CONTRACTUAL SETOFF RIGHTS

19. On or about January 31, 2014, and pursuant to the terms of the Global Settlement Agreement, the Debtors rejected the Lease. As a result, Piedmont submitted a draw request to PNC Bank in accordance with the Letter of Credit.

20. PNC Bank paid Piedmont's draw request in the total amount of $1,303,315.00, as agreed and in accordance with the terms of the Letter of Credit.

21. According to the Reimbursement Agreement, Savient agreed to pay to PNC Bank any amount paid by PNC Bank with respect to each draft or other payment demand made upon PNC Bank, **on the date that such payment is to be made by PNC Bank** or such earlier time as PNC Bank may reasonably require. See Reimbursement Agreement, at ¶ 2(a)[Emphasis added]. In this case, the payment was to be made by PNC Bank on January 31, 2014, when the draw request was made by Piedmont.

22. In addition, Savient agreed to pay PNC Bank interest at the Base Rate plus 4% per annum on all amounts payable by Savient to PNC Bank **from the date payment is due to date of payment, plus all charges and expenses incurred by PNC Bank in connection with the Reimbursement Agreement, including all reasonable legal fees and expenses**. See id. at ¶ 2(c)[Emphasis added]. Payment of the draw request was due on January 31, 2014, when the draw request was made by Piedmont.

23. As of February 21, 2014, interest is owed to PNC Bank on the amounts paid to Piedmont pursuant to the Letter of Credit in the total amount of $5,511.94, as is shown on the attached payoff statement (the "**Payoff Statement**"). Pursuant to PNC Bank's records, interest is calculated from January 31, 2014, the date that payment was due on the draw request, to

February 21, 2014, at a rate of 7.25% per annum, which represents a base rate of 3.25%, plus 4% (per diem $262.47).

24. A true and accurate copy of the Payoff Statement attached as **Exhibit F** to the Bertoli Affidavit and incorporated herein by reference.

25. PNC Bank is also owed interest continuing at a rate of 7.25% per annum (per diem $262.47), from February 22, 2014, until paid, in accordance with the terms of the Reimbursement Agreement. Assuming that PNC Bank is allowed to set off the funds represented by the CDs as of the hearing date of PNC Bank's Motion for Relief from Stay, March 17, 2014, PNC Bank's accrued interest will total $6,299.28.

26. Pursuant to PNC Bank's records, PNC Bank is also entitled to a Loan Administration fee in the amount of $200.00.

27. To date, PNC Bank has incurred attorneys' fees in the total amount of $15,195.19, and costs and expenses in the amount of $206.00.

28. As collateral security for the due payment and performance of PNC Bank's obligations to Savient on the Letter of Credit, Savient granted PNC Bank a contractual possessory security interest in, an unqualified right to possession and disposition of, and a contractual right to set off against the CDs. See id. at ¶4.

29. Savient's obligations under the Reimbursement Agreement were absolute, unconditional and irrevocable and contractually binding from the date that the Reimbursement Agreement was executed. See id, at ¶ 3(a).

30. PNC Bank is authorized to honor any draw request without regard to, and without any duty to inquire into, any transaction or obligation underlying such request, or any dispute

between Savient and the beneficiary. See id. at ¶ 3(b).

31. Accordingly, PNC Bank is entitled to enforce its setoff rights under nonbankruptcy law and draw on the funds represented by the CDs in accordance with the Reimbursement Agreement and Pledge Agreements in satisfaction of the obligations owed by Savient to PNC Bank under the Reimbursement Agreement and the Pledge Agreement, including all interest and attorneys' fees.

32. PNC Bank is owed a total amount of $1,330,727.41, including all interest at a rate of 7.25% per annum (per diem $262.47) from January 31, 2014 to March 17, 2014, and attorneys' fees and expenses.

## RELIEF REQUESTED

33. By this Motion, PNC Bank requests relief from the automatic stay and to effectuate setoff rights pursuant to §§ 553(a) and 362(d)(1) of the Bankruptcy Code.

### A. PNC Is Permitted To Exercise Its Setoff Rights Under 11 U.S.C. 553(a).

34. Section 553(a) of the Bankruptcy Code provides in part:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case…

11 U.S.C § 553(a). Section 553(a) of the Bankruptcy Code does not create a right of set-off under the Bankruptcy Code but, instead, preserves (with certain limitations) a creditor's ability to exercise its right to set-off under applicable non-bankruptcy law. In re SemCrude L.P., 399

B.R.388, 393 (Bankr. D. Del. 2009). The provision is permissive rather than mandatory such that the decision to allow set-off is within the sound discretion of the bankruptcy court. In re WL Homes LLC, Case No. 09-10571 (BLS), 2012 Bankr. LEXIS 2179, at *2 (Bankr. D. Del. May 16, 2012)(citing In re Bevill Bresler & Schulman Asset Mgmnt Corp., 896 F.2d 54, 57 (3d Cir. 1990)). However, "a creditor's right of set-off may be denied only if there is some basis in equity to do so." In re Communication Dynamics, Inc., 382 B.R. 219, 227 (Bankr. D. Del. 2008). Such equitable considerations do not include whether unsecured creditors would benefit from denying a creditor the right to exercise set-off. Id. at 228 ("Equity does not mandate that one creditor lose rights it has under state law and the Bankruptcy Code simply because other creditors will benefit by that loss."). "Set-offs in bankruptcy have long been 'generally favored' [and] a presumption in favor of their enforcement exists." In re Weigand, 199 B.R. 639, 641(W.D.Mi.1996) citing In re DeLaurentiis, 963 F2d 1269, 1276 (9th Cir 1992).

35. PNC Bank has a contractual right of setoff under the Reimbursement Agreement and Pledge Agreements.

36. If a right to set off exists outside of bankruptcy, three factors must be met for a setoff to be permissible under Section 553(a) of the Bankruptcy Code:

   1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case.
   2. The creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case.
   3. The debt and the claim are mutual obligations.

Folger Adam Security Inc. v. DeMatteis/MacGregor J.V., 209 F.3d 252, 262-63 (3d Cir. 2000) (citing Braniff Airways Inc. NI Exxon Co. U.S.A., 814 F.2d 1030, 1035 (5th Cir. 1987)).

Each element identified by the Court of Appeals in Folger Adam Security is present here and,

therefore, PNC Bank should be permitted to exercise its right of set off.

37. PNC Bank's obligations to Savient on the Letter of Credit, were absolute, unconditional, irrevocable and contractually binding, and in a liquidated amount prior to the Petition Date. Similarly, PNC Bank's claim to the funds represented by the CDs also arose prior to the Petition Date. Savient's obligations to PNC Bank on the Reimbursement Agreement were absolute, unconditional and irrevocable and contractually binding from the date that the Reimbursement Agreement was executed. PNC Bank also held a contractual possessory security interest in, an unqualified right to possession and disposition of, and a contractual right to set off against the funds represented by the CDs prior to the Petition Date. Accordingly, the debt and the claim are mutual obligations.

38. The CDs represent the liquidated amounts owed to PNC Bank by Savient pursuant to the Reimbursement Agreement.

39. On the Petition Date, PNC Bank's obligations under the Letter of Credit and PNC's claim against the funds represented by the CDs were mutual obligations as defined by the Court of Appeals in Folger Adam Security. See id.

40. No equitable considerations weigh against permitting PNC Bank to exercise its set off rights under the Reimbursement Agreement, applicable state law and the Bankruptcy Code.

41. Further, PNC Bank is entitled to interest and reasonable attorneys' fees and expenses pursuant to the Reimbursement Agreement.

42. According to Section 506 (b) of the Bankruptcy Code:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest

on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506 (b).

43. PNC Bank's claim is secured by property which is greater than the amount of such claim. Collectively, the current total value of the CDs is $1,456,465.26. PNC Bank has paid Piedmont $1,303,315.00, as agreed. The total amount of interest from January 31, 2014, the date the monies were due to be paid by PNC Bank, through the hearing date, March 17, 2014, plus all costs, reasonable attorneys' fees and expenses incurred by PNC Bank in accordance with the terms of the Reimbursement Agreement totals $27,412.41. As a result, PNC Bank is owed a total amount of $1,330,727.41.

44. Therefore, PNC Bank is entitled to set off against the funds represented by the CDs to recover the full amount owed by Savient under the Reimbursement Agreement and Pledge Agreement, including all interest from January 31, 2014 through the hearing date and reasonable attorneys' fees and expenses, in the total amount of $1,330,727.41.

45. Said setoff is in satisfaction of the obligations owed by Savient under the Reimbursement Agreement and Pledge Agreements.

46. If the Court were to grant the Motion, PNC Bank would return to Savient the funds remaining under the CDs in the amount of $125,737.85, and withdraw the PNC Proof of Claim.

### B. Cause Exists Under Section 362(d)(1) To Lift The Stay To Permit PNC Bank To Exercise Its Set Off Rights.

47. While PNC Bank is permitted to exercise set off rights under section 553(a) of the Bankruptcy Code, the automatic stay nonetheless prohibits "the set-off of any debt owing to the debtor that arose before the commencement of the case..." 11 U.S.C. § 362(a)(7). As a result, PNC Bank must obtain relief from this Court to exercise its set-off rights. Citizens Bank of Maryland v. Stumpf, 516 U.S. 16 (1995).

48. Section 362(d)(1) of the Bankruptcy Code provides that "(o)n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . (1) for cause, including the lack of adequate protection of any interest in property of such party in interest . . ." 11 U.S.C. § 362(d)(1). Neither the Bankruptcy Code nor the legislative history of section 362(d)(1) of the Bankruptcy Code define "cause." In re Brown, 311 B.R. 409, 412-13 (E.D. Pa. 2004); Trident Assocs. Ltd. P'ship v Metro Life Ins Co. (In re Trident Assocs Ltd. P'ship), 52 F.3d 127, 131 (6th Cir. 1995). Courts have regarded the term "cause" as an "intentionally broad and flexible concept" that must be determined on a case-by-case basis. Brown, 311 B.R. at 412-13 (decisions "offer no precise standards to determine when 'cause' exists to successfully obtain relief from the stay."); see also Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir. 1997).

49. The Delaware Bankruptcy Court has held that, with respect to obtaining relief from the automatic stay to exercise the right of set-off, "[s]howing cause requires the creditor to first establish its right to set-off, by finding an independent right of set-off, under non-bankruptcy law. It then must show that the conditions § 553 places on set-off are satisfied." In re WL Homes, LLC, 471 B.R. 349, 352 (Bankr. D. Del. 2012); see also In re Nuclear Imaging Systems,

Inc., 260 B.R. 724, 730 (Bankr. E.D. Pa. 2000) ("Courts have generally concluded that the existence of mutual obligations subject to set-off constitutes sufficient 'cause' to meet the creditor's initial evidentiary burden in seeking relief from the automatic stay.") After the creditor makes a prima facie showing that cause exists, the ultimate burden shifts to the debtor to prove that no cause exists to lift the automatic stay. See 11 U.S.C. § 362(g); Brown, 311 B.R. at 412.

50.     As discussed above, PNC Bank possesses a right to set off the funds represented by the CDs under the Reimbursement Agreement and Pledge Agreements, and the setoff that PNC Bank seeks to effectuate is permissible in accordance with Section 553(a) of the Bankruptcy Code. As a result, cause exists to grant the relief requested and modify the stay under Section 362(d)(1) of the Bankruptcy Code to authorize the set off of the CDs, and this Court should grant PNC Bank relief from the automatic stay.

**WHEREFORE**, PNC Bank, National Association respectfully requests that the Court enter an order substantially in the form attached hereto, and modifying the automatic stay for the limited purpose of allowing PNC Bank to exercise its rights under nonbankruptcy law to effect a setoff, in the amount of $1,330,727.41, of PNC Bank's obligations to Savient under the Letter of Credit against Savient's obligations to PNC Bank under the Reimbursement Agreement and Pledge Agreements.

Dated: February 24, 2014

Respectfully Submitted,

DILWORTH PAXSON LLP

*/s/ Martin J. Weis/*
_____
Martin J. Weis (I.D. No. 4333)
704 King Street, Suite 500
Wilmington, Delaware 19899
Tel: (302) 571-9800
Tel: (302) 571-8875
Email: mweis@dilworthlaw.com

And

Richard Iain Hutson, Esq.
Weinstock Friedman & Friedman, P.A.
Executive Centre
4 Reservoir Circle
Baltimore MD  21208
Phone: (410)559 9000, ext. #282
Fax: 410-415-6011
Email: rhutson@weinstocklegal.com

*Counsel for PNC Bank, National Association*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 24th day of February 2014, a copy of the foregoing Motion Of PNC Bank, National Association For Relief From Stay, Notice thereof and Proposed Order were served on the parties listed below by first-class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that notice was electronically mailed to said party:

Anthony W. Clark, Esquire
Skadden Arps Slate Meagher & Flom LLP
One Rodney Square
Wilmington, DE 19899

Dain A. De Souza, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
920 N. King Street
P.O. Box 636
Wilmington, DE 19801

David M. Turetsky, Esquire
Kenneth S. Ziman, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036-6522

David R. Hurst, Esquire
Cole, Schotz, Meisel, Forman & Leonard
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801

*Counsel to Debtor*

Kristopher M. Hansen, Esquire
Erez E. Gilad, Esquire, Esquire
Matthew G. Garofalo, Esquire
Stroock & Stroock & Lavan, LLP
180 Maiden Lane
New York, NY 10038-4932

*Counsel to Unsecured Creditors Committee*

Andrew N. Rosenberg, Esquire
Elizabeth R. McColm, Esquire
Jacob A. Adlerstein, Esquire
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019

*Counsel to the Unofficial Committee of Senior Secured Noteholders*

Office of the United States Trustee
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
Attn: Mark S. Kenney, Esq.

_____
Martin J. Weis